# EXHIBIT G

1

1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2

3

4       UNITED STATES OF AMERICA,            )
                                             )
5       vs.                                  )  Criminal Action
                                             )
6       ELIJAH MAJAK BUOI,                   )  No. 20-10130-FDS
                           Defendant         )
7                                            )
                                             )
8                                            )

9

10      BEFORE:   THE HONORABLE F. DENNIS SAYLOR, IV

11

12                  CONTINUED FINAL PRETRIAL CONFERENCE
                          CONDUCTED BY ZOOM
13

14            John Joseph Moakley United States Courthouse
                          Courtroom No. 10
15                        1 Courthouse Way
                          Boston, MA 02210
16
                          February 18, 2022
17                          10:02 a.m.

18

19

20

21

22

23                       Valerie A. O'Hara
                        Official Court Reporter
24        John Joseph Moakley United States Courthouse
                          1 Courthouse Way
25                        Boston, MA 02210
                       E-mail: vaohara@gmail.com

2

1    APPEARANCES:

2    For The United States:

3        United States Attorney's Office, by MACKENZIE A. QUEENIN,
     ASSISTANT UNITED STATES ATTORNEY, DELLA SENTILLES, ASSISTANT
4    UNITED STATES ATTORNEY, 1 Courthouse Way, Suite 9200, Boston,
     Massachusetts 02110;
5
     For the Defendant:
6
         BRYAN PATRICK OWENS, ESQ., 405 Main Street, Suite 700,
7    Houston, Texas 77002.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                          PROCEEDINGS

2              THE CLERK:  Court is now in session in the matter

3    of United States vs. Elijah Buoi, Matter Number 20-10130.

4              Participants are reminded that photographing,

5    recording and rebroadcasting of this hearing is prohibited

6    and may result in sanctions.

7              Would counsel please identify themselves for the

8    record, starting with the government.

9              MS. QUEENIN:  Good morning, your Honor,

10:02AM 10   Mackenzie Queenin and Della Sentilles on behalf of the

11   United States.

12             THE COURT:  Good morning.

13             MR. OWENS:  Bryan Owens representing Elijah Buoi.

14   Good morning.

15             THE COURT:  All right.  Good morning.  Since we

16   last met, I have three motions in limine I think on file.

17   One was filed under seal concerning precluding reference to

18   a witness arrest, Number 146, which I'm going to grant.

19             The other two are more substantive, Number 142,

10:02AM 20   which I think must have been filed pretty late last night

21   to exclude defense exhibits and a motion in limine

22   apparently filed this morning concerning what is basically

23   404(b) evidence.

24             Because we are impaneling on Tuesday, I think what

25   I would like to do is to at least hear from you.  I may not

4

```
 1   be in a position to rule on these motions yet, and I may
 2   want formal responses, but I think it would be useful to at
 3   least have some discussion, and some of this may need to be
 4   dealt with Tuesday morning, if not later, but why don't
 5   I --
 6           MS. QUEENIN:  Your Honor.
 7           THE COURT:  Yes, Ms. Queenin.
 8           MS. QUEENIN:  Respectfully, with respect to the
 9   defense motion in limine filed last night.
10:03AM 10           THE COURT:  Yes.
11           MS. QUEENIN:  That information, with all due
12   respect, that the government intended to use the other PPP
13   applications, and I'll get to the EIDL loan in a minute,
14   was known to the defense for over a month.  The government
15   intends to reference --
16           THE COURT:  It was also the subject of your own
17   motion, but...
18           MS. QUEENIN:  And the government intends to and is
19   planning on referencing those exhibits in opening on
10:04AM 20   Tuesday.
21           THE COURT:  That's why I want to hear it now.  I
22   assume there's a similar set of arguments as to the defense
23   exhibits, but that's why we're meeting now, that's why I
24   want to talk now.  I've got a naturalization at eleven.  If
25   we're not done, we can, you know, come back, but that's why
```

5

1   I want to hear from you all now.  Okay.

2          MS. QUEENIN:  Which motion would your Honor like

3   to address?

4          THE COURT:  Why don't we start with your motion to

5   exclude defense exhibits, which is Number 142.

6          MS. QUEENIN:  So with respect to this, your Honor,

7   I will say to the extent Mr. Owens doesn't intend to open

8   or put in these defense exhibits, this could be something

9   the Court could defer ruling on until a later time if we're

10:04AM 10   trying to sort of streamline things for the Court here.

11          The government's motion outlines various types of

12   exhibits recently received by the government.  The main

13   issue the government has with those exhibits pertains to

14   the exhibit that post date the arrest in this case.

15   Specifically, there are a subset of exhibits that the

16   government's unable to determine the date on.

17          I know counsel has been notified of that and is

18   attempting to gather more information about the date of

19   those exhibits provided to the government, but to the

10:05AM 20   extent it's unable, counsel is unable to produce

21   information about when those PowerPoint slide decks were

22   created, I don't think that they are relevant because they

23   appear on their face, at least a subset of them, Exhibit 7,

24   11, 15 and 18 appear to post date the defendant's arrest

25   and pertain to the company's capabilities and the fact that

6

1    the company is real and is doing things, and the government

2    doesn't intend to dispute that Sosuda Tech, the company at

3    issue, was an incorporated entity.

4         The issues the government intends to put before

5    the jury are that the applications, the loan applications,

6    and the information contained therein was false.  The

7    government doesn't intend to allege that Sosuda Tech wasn't

8    incorporated, and, frankly, the capabilities of the company

9    are what the company was doing after the defendant was

10:06AM 10   arrested don't seem relevant to the issues the jury is

11   going to be asked to determine.

12        As the government's motion notes, typically this

13   would be something that the government would reserve on

14   until the defense attempts to introduce the exhibits, but

15   because we expect the defendant will be testifying and

16   taking the stand, the government is concerned about the

17   optics of needing to object multiple times in front of a

18   jury when a defendant is testifying, and so for that

19   reason, we're teeing it up for the Court in advance.

10:07AM 20        THE COURT:  All right.  Mr. Owens.

21        MR. OWENS:  Thank you.  Good morning, everyone.

22   The timing of the creation of those documents, what I'm

23   told is they were not created on one specific day.  These

24   are projects that have been ongoing for years that

25   Sosuda Tech has been developing, and I think if there's

7

1    problems with authentication, we can get to that at the

2    time that I seek to question the witness about them.

3        They are -- they go to the kind of the heart of

4    the defense that Sosuda Tech is a viable entity, it's a

5    viable entity that had ongoing business relationships,

6    ongoing business projects that it was developing, which

7    we're going to argue go a long way towards the company's

8    eligibility for the PPP loans, so I can't agree that they

9    were just created one day after the date of the indictment

10:08AM 10    or after the alleged dates in the fall, or, excuse me, the

11    spring of 2020.

12        They were certainly in progress before then, and

13    it would be hard to just pluck a document that's been

14    changed multiple times, edited multiple times and just

15    plucked the date that was in existence or the version that

16    was in existence on a specific date.

17        I think the government can certainly cross-examine

18    whoever I intend to introduce those through, when they were

19    created, the viability of those projects, but, your Honor,

10:08AM 20    I think I believe just, you know, in limine preventing us

21    from getting into those documents will hamstring our

22    defense, your Honor.  Thank you.

23        THE COURT:  All right.  If it's true that the

24    defendant isn't going to open, it's not clear that I need

25    to resolve this before Tuesday morning or defense is not

**JA164**

8

1    going to open on Tuesday.

2        And, again, it's difficult to assess this in the

3    abstract.  I may need a voir dire on this to understand

4    precisely what the testimony is going to be.  Obviously,

5    the loan applications in question involve alleged false

6    statements in April and June 2020 in a document created a

7    day after the fact, never mind a year or two after the

8    fact, it would be irrelevant.

9        It's possible, certainly, that some documents, you

10:09AM 10    know, were in existence at the time and since have been

11    modified and the computer dates show the date last

12    modified, I don't know.  I have to hear the testimony.

13    Nothing can come in unless it's authenticated and fits

14    within the hearsay exception and all of that, but it also

15    has to be relevant, and I'm not sure I can answer the

16    question, answer that question without knowing more, in

17    particular, how the defendant expects to establish that any

18    of these documents reflect the number of employees or where

19    they were physically located or the size of the payroll or

10:10AM 20    anything like that at the time the applications were made.

21        And, you know, the fact that they got a contract

22    or got a business a year later is not relevant to that

23    inquiry,

24        So I'm not going to permit any of it to be

25    admitted without at least some further information, and,

9

```
 1    presumptively, I think I need a voir dire, or, if nothing
 2    else, at least a representation of exactly what how the
 3    defendant expects to show not only that they are authentic
 4    and not hearsay but that they are relevant, that is, they
 5    reflect the activities of the business at or about the time
 6    of the loan submission because otherwise they're not
 7    relevant.
 8          I'm not happy, of course, that this thing is being
 9    dropped on me one business day before the trial.  We do
10    have disclosure requirements.  This whole thing strikes me
11    as being unfair.  I'm not saying I'm going to exclude it on
12    that basis, but I'm certainly not happy about that, and it
13    seems to me that that's not the way in fairness this ought
14    to work, and it's possible that that fact could be a thumb
15    on the scale if it is precluding the government from, for
16    example, conducting an investigation on almost literally no
17    notice as to some of the issues the documents might raise,
18    but I'm going to put that on hold for the time being on the
19    assumption that first the defendant is not going to open on
20    Tuesday.
21          If the defendant does, it's not going to refer to
22    any of these documents, and unless someone convinces me
23    otherwise, I'm going to need either a voir dire or some
24    affirmative representation as to how -- what the testimony
25    would be establishing that these documents are authentic,
```

10

1   not hearsay and relevant.

2          So let us put that on hold for now, and let's talk

3   about 143, which is the essentially a 404(b) motion.

4   Mr. Owens.

5          MR. OWENS:  Thank you, your Honor.  So the motion

6   addresses the two uncharged or three uncharged business

7   loan applications, two to Bank of America and Lendio, which

8   was submitted May 29th, 2020 and the economic industry

9   disaster loan.

10:13AM 10         THE COURT:  What was the date of that, remind me?

11         MR. OWENS:  The EIDL loan, I'm sorry, one moment,

12  your Honor, May 29th on the other two.  The EIDL is --

13  Mackenzie, can you help me?

14         MS. QUEENIN:  Your Honor, if I may, the government

15  does not intend to introduce the EIDL loan application.

16  There's a caveat there that I'm happy to get into.  There

17  may be a need to elicit very narrow testimony on it to the

18  extent it's referenced in other documents, but we don't

19  intend to put in that application, so to the extent that

10:14AM 20  issue narrows the issue before the Court, I think the only

21  thing Mr. Owens need be addressing at this stage is the

22  other PPP applications.

23         THE COURT:  Okay.  Let's talk about that.

24         MR. OWENS:  Okay.  Thank you.  So the government

25  indicated they intend to introduce those as intrinsic to

**JA167**

11

1    the fraud.  The case cited by the government is *U.S. vs.*
2    *Souza*, which involves a case out of the District of
3    Massachusetts where someone was charged with structuring
4    withdrawals to avoid the reporting requirements, and the
5    404(b) evidence that was submitted was a swindle of the
6    home owner in Maine through which the defendant obtained
7    the funds that he eventually withdrew in amounts below the
8    reporting requirements.
9         So the Court stated that that was inextricably
10:15AM 10   intertwined because it allowed the jury to understand where
11   that money came from, it was $54,000, where the money came
12   from that the defendant eventually withdrew in sums of
13   $9,000.
14        This case that we're dealing with is quite
15   different.  These loan applications, one does not depend on
16   the other.  They are ancillary events, one loan to whatever
17   PPP lender it is.  There's no requirement that other loans
18   be made, so each application can be evaluated on its own,
19   so to the extent that they're intertwined, they're
10:15AM 20   intrinsic.  We disagree with that just because the loans
21   are independent of each other.
22        Now, the 404(b) evidence, if there's a 404
23   argument, we argue that's not applicable because we
24   executed a stipulation drafted by the government where we
25   waived authentication objections to the evidence, the wire

12

1   transfer information, and the fact of whether or not it was

2   submitted -- the loan application was submitted for

3   Mr. Buoi's home, so there's a Supreme Court case on point.

4   It's cited in the motion, *Old Chief vs. United States,*

5   which says when there's a stipulation regarding the

6   admissibility of evidence, that diminishes any 404(b)

7   arguments because any claim that the defense could make

8   which or any defense which the defense -- which we could

9   make based on those 404(b) rationales or theories of

10:16AM 10   admissibility, such as intent, lack of mistake, those are

11   taken away because we're not going to be disputing those

12   issues.

13       So, for that reason, we don't think 404(b)

14   evidence comes in through any theory of admissibility under

15   404(b), so that leaves, your Honor, this is just piling on

16   the government has four applications to go after him with,

17   like at some point we just get to the point where we're

18   piling on.

19       If the government can't make its case with four

10:17AM 20   applications, I don't understand why two additional are

21   going to get them over the finish line on this.

22       At some point, it's just -- we get to the point

23   now where it's six applications instead of four.  What's

24   being applied is clear, the guy is a fraudster, you all

25   need to convict him because he just does this, he's a

13

1    fraudster.  This is propensity evidence, and, your Honor, I

2    think with four applications, the government has more than

3    enough evidence.

4         If you look at the exhibit list, most of the

5    exhibits, the government exhibit lists, most of the

6    exhibits go to the four loans, so, your Honor, I think if

7    they can't make their case with the four, just going with

8    two additional loans, it's merely propensity evidence, your

9    Honor.  Thank you.

10:18AM 10        THE COURT:  All right.  Ms. Queenin.

11        MS. QUEENIN:  Your Honor, first of all, I just

12    want to address the timeliness of this motion, and I'll be

13    brief on it because I recognize the Court will still

14    address the merits, but the government raised that it

15    intended to introduce these applications quite some time

16    ago.

17         We're now on the eve of trial, and so as a

18    preliminary matter, the fairness of the timing of this

19    filing should give some weight, but that being said, the

10:18AM 20    multiple loan applications are crucial to the government's

21    case and are intrinsic.

22         Each of the defendant's loan applications contains

23    conflicting information.  The government, for what it's

24    worth, does intend to elicit testimony that it's not

25    improper for a defendant to submit multiple PPP loan

14

1    applications, but the information in those applications

2    needs to be true and accurate.  Here, the information was

3    not true and accurate, and the multiple applications are

4    critical to establish the government's case.

5        I don't think it's fair to say that because we

6    have some inconsistency we shouldn't get to put in all of

7    them.  They are all part of the same scheme to defraud,

8    which is what makes this intrinsic.  The government is not

9    arguing that this was a separate crime, it's all part of

10:19AM 10    the same scheme as charged in the wire fraud counts.

11        Those applications, there are connections between

12    them.  In the first application, the defendant tells the

13    bank he has 353 employees.  That changes over time, and the

14    patterns between the applications are important to

15    establish why the defendant knew what he was telling

16    different institutional lenders at different times was

17    false.

18        It says nothing about the defendant's propensity

19    because it is part of the crime that is charged in this

10:20AM 20    case.  If the Court was inclined to say that it wasn't

21    intrinsic, which, respectfully, we would disagree with, it

22    is admissible to show absence of mistake as he's submitting

23    application after application after application, all

24    containing conflicting information.

25        So the multiple applications are -- the government

15

1    doesn't intend to harp and go through each application in

2    excruciating detail. We're cognizant this is a paper case.

3    We have a jury. We want to move it quickly, but we do and

4    should be permitted to elicit the testimony from the

5    witnesses about the fact of other applications.

6           We don't intend to beat the jury over the head

7    with paper on the applications that aren't charged, but we

8    do intend and should be permitted to reference them because

9    they are all part of the same scheme to defraud.

10:20AM 10         THE COURT: All right. Mr. Owens, any response to

11   that?

12          MR. OWENS: Your Honor, just out of respect for

13   the Court, regarding the timing of this, the questions

14   about --

15          THE COURT: Sorry, can you speak up? I'm having a

16   little trouble hearing you.

17          MR. OWENS: Sorry about that. Your Honor, the

18   questions kind of put me in a tough position about who was

19   going to be counsel, and it really hamstrung my ability to

10:21AM 20  paper this case, so I do apologize for the last minute

21   filing on this, and just as a way of expressing, I meant no

22   disrespect to the government or to the Court by the late

23   filing, but, again, your Honor, I would just stress that

24   the two additional, the volume -- the government has four

25   loans. They've had now going on 21 months to indict on the

16

    1   other two applications.

    2        I just, when I look at this, all I see is an

    3   intent to get this in to show that Mr. Buoi goes around

    4   defrauding people, so I can't avoid the thought that this

    5   is strictly propensity evidence, and I cited -- the Court,

    6   I mean, the government doesn't offer any case, like I said

    7   before, the case cited by the government is -- involves a

    8   timeline of where the money came from, and that's not what

    9   we're dealing with here.  We're dealing with four

10:22AM 10   independent loans, so, again, your Honor, we think it's

   11   propensity evidence.  We would ask the Court to exclude it.

   12   Thank you.

   13        MS. QUEENIN:  Your Honor, at the risk of if the

   14   Court intends to deny the defense motion, the government

   15   would ask to brief it on an expedited briefing schedule and

   16   get a ruling.  I don't have a sense of where your Honor is

   17   on this, but I do think it's clear that it is intrinsic.

   18        THE COURT:  All right.  What I'm going to do is

   19   I'm going to issue a ruling.  I'm not going to preclude the

10:23AM 20   government or anyone else from filing a supplemental

   21   memorandum either to change my mind or to stiffen my spine,

   22   depending on which side you're on, but I'm going to deny

   23   the motion, Defense Motion Docket Number 143.

   24        As to the timing, I do understand what Mr. Owens

   25   is saying, I'm not going to grant or deny it on that basis,

17

1    and I'll address it on the merits.

2           As another sort of introductory issue as to the

3    question of whether the government is piling on, the

4    government is required to prove its case beyond a

5    reasonable doubt.  It's supposed to pile on.  That's the

6    way this is supposed to work, and I'm not going to exclude

7    it on the grounds of the, quote, "they have enough

8    evidence."  The question is does it violate the rules in

9    one way or the other, either Rule 404, Rule 403 or anything

10:24AM 10    else, and the government is not required to charge every

11    criminal act.

12           As to whether or not it's intrinsic to the crime

13    depends, I think, on whether this is a single scheme to

14    defraud with six iterations, four of which have been

15    charged, which, of course, certainly may be correct or

16    whether these are multiple individual acts of wire fraud.

17           My instinct is that it is probably a single scheme

18    to defraud the way this has been charged, but I'm going to

19    treat it, nonetheless, as 404(b) evidence because I think

10:25AM 20    that is the safer more prudent way to approach this.

21           I don't see that this is inflammatory in any way.

22    Among other things, the government is even acknowledging

23    it's perfectly permissible to submit multiple applications,

24    and there's nothing in here that's going to stir up jury

25    emotions.  In fact, it may bore them, but, regardless, it's

18

1   not inflammatory.  The question is it propensity evidence?

2   Is the government attempting to show that this is someone

3   who does have a bad character, who is a fraudster, to use

4   the defendant's words, and goes around doing this sort of

5   thing?

6       If it were a different fraud of a different kind

7   in a different time frame against a different type of

8   intended victim, that argument might carry some weight.  I

9   don't think it carries any weight here really.  I think it

10:26AM 10   is evidence rather going to show the defendant's intent and

11   particularly the absence of mistake.

12       There's a well-developed body of case law with

13   regard to the filing of false tax returns or failure to

14   file tax returns, false tax returns or absent tax returns

15   for years outside the statute of limitations period are

16   generally admitted under Rule 404(b) to show that, again,

17   the defendant didn't simply make a mistake on a tax return

18   is certainly possible, but that it's the defendant having

19   committed the same act for many years tends to prove that

10:27AM 20   the defendant did, in fact, act intentionally and not by

21   mistake.

22       This isn't quite the same thing, obviously, but I

23   think given that these two uncharged applications are in

24   the same window of time as the four charged applications, I

25   think it does go to intent quite clearly.  I don't think it

19

1    fails under the prong of the rule that requires me to

2    consider whether it's a waste of time or unduly cumulative.

3         Obviously, the government has to make sure it's

4    not wasting time and not spending more time, for example,

5    on an application that's not charged than an application

6    that is, but based on representations that the government

7    is going to introduce these, and I'm inferring that they'll

8    point out whatever details about that they want to point

9    out and then move on.  I don't see that that's going to

10:28AM 10    consume an unusual amount of trial time.

11         I think in the interests of prudence, when we get

12    to this point, I will issue a cautionary instruction if so

13    requested reminding the jury that these two applications

14    were not specifically charged in the indictment and do not

15    or don't have particular -- they're not subject to

16    individual counts and advising the jury that they may not

17    consider this as evidence that the defendant has a bad

18    character but rather that they may consider it for whatever

19    weight they choose to give it in ascertaining whether he

10:29AM 20    acted intentionally as opposed to by mistake, accident, or

21    neglect.

22         So I'm going to deny Docket Entry 143, and just

23    given the way all of this is unfolding, if someone wants to

24    file a supplemental memorandum of law either reinforcing my

25    conclusion or pointing out something I have neglected to

20

 1    address or attempting to convince me that I'm wrong, I will

 2    read it.

 3            So, 142 will remain pending for the time being,

 4    and 143 is denied, and I think I addressed the one under

 5    seal, 146, or whatever it was, which I granted.

 6            All right.  Anything else that we need to talk

 7    about or anything with regard to my ruling that requires

 8    clarification or anything further, Ms. Queenin?

 9            MS. QUEENIN:  Your Honor, the only other thing the

10:30AM 10    government wanted to raise is whether it's your Honor's

11    practice to allow a case agent to sit for the duration of

12    the trial, not at counsel table but in the gallery?

13            THE COURT:  Yes, a single identified case agent.

14    Mr. Owens, are you going to move to sequester the

15    witnesses?

16            MR. OWENS:  Yes, I will, your Honor.

17            THE COURT:  I will grant that motion with the

18    exception of a single case agent for the government.

19            MR. OWENS:  Your Honor, may I ask you for the --

10:30AM 20    I'm sorry, may I ask you for the citation for that tax case

21    that you cited just a few minutes ago?

22            THE COURT:  I don't have it off the top of my

23    head.

24            MR. OWENS:  Sorry.

25            THE COURT:  It's probably dangerous, my clerks are

21

1    skirmishing off camera here, but many years ago I tried an
2    awful lot of tax evasion cases as a prosecutor or things
3    like that, and I'm quite confident because at least as of
4    the time I did that, it was perfectly appropriate to
5    introduce, again, false tax returns or the absence of tax
6    returns for years outside the limitation period because, as
7    you may know, if you've ever done this, if you charge a
8    single tax year, it's almost impossible to prove intent
9    except in extreme cases because everyone makes mistakes on
10:31AM 10   their tax returns, so you want three or four years in a
11   row, and if you have years outside the limitations period,
12   you might have 7 or 8 or 12 years of a particular tax
13   scheme.
14          And I'll tell you what, I'll put that on
15   Ms. Queenin, she can see if she can find cases or something
16   similar, again, with the point being, not that this is
17   perfectly analogous, because we're not talking about a
18   limitations period but uncharged acts of basically the
19   exact same type of behavior are strong evidence of intent.
10:32AM 20          MR. OWENS:  Understood.
21          THE COURT:  Is how I would distill the legal
22   principle there.
23          MR. OWENS:  Thank you.
24          THE COURT:  It doesn't answer the 404(b) question
25   by itself, but it is certainly part of the mix, and, again,

**JA178**

22

1    for example, if he had participated in a Ponzi scheme

2    involving different defendants in Oklahoma, that would be

3    an entirely different question.  Okay.  Anything else,

4    Mr. Owens?

5              MR. HOSSAIN:  No, thank you, your Honor.

6    Thank you for your time.

7              THE COURT: Okay.  And we will regroup at 9 a.m. on

8    Tuesday morning, February the 22nd.  And I do think,

9    Mr. Owens, it's sensible because I'm going to want it in

10:33AM 10    some form or another for you to contemplate a voir dire, an

11    affidavit, maybe even an attorney brief to start that lays

12    out in some detail how you expect to get these documents

13    into evidence that are subject to 142 because I'm going to

14    want to know before I allow any testimony about it.

15              MR. OWENS:  Understood, will do, thank you.

16              THE COURT:  All right.  If there's nothing else

17    then, thank you, have a good weekend, all.  I guess you're

18    probably not going to be skiing or relaxing anywhere, but,

19    nonetheless, have a good weekend, all, and I'll see you

10:33AM 20    Monday morning.

21              MR. OWENS:  Thank you.

22              (Whereupon, the hearing was adjourned at

23    10:33 a.m.)

24

25

23

1                           C E R T I F I C A T E
2
3
4        UNITED STATES DISTRICT COURT )
5        DISTRICT OF MASSACHUSETTS ) ss.
6        CITY OF BOSTON )
7
8                  I do hereby certify that the foregoing
9        transcript, Pages 1 through 23 inclusive, was recorded by
10       me stenographically at the time and place aforesaid in
11       Criminal Action No. 20-10130-FDS, UNITED STATES of AMERICA
12       VS. ELIJAH BUOI and thereafter by me reduced to typewriting
13       and is a true and accurate record of the proceedings.
14                  Dated this July 18, 2022.
15
16                              s/s Valerie A. O'Hara
17                              _____
18                              VALERIE A. O'HARA
19                              OFFICIAL COURT REPORTER
20
21
22
23
24
25