**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                     )
**ELIJAH BUOI,**                    )
                                       )
                                       )     **Civil Action No.**
            **Petitioner,**           )     **24-13133-FDS**
                                         )
**UNITED STATES OF AMERICA,**      )
                                       )
            **Respondent.**         )
_____)

**MEMORANDUM AND ORDER ON**
**PETITIONER'S MOTION TO VACATE, SET ASIDE, OR**
**CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

**SAYLOR, J.**

This is a motion to vacate, set aside, or correct a sentence filed by a prisoner in federal custody pursuant to 28 U.S.C. § 2255. Petitioner Elijah Buoi challenges his sentence on the ground that he received ineffective assistance of counsel because his trial counsel (1) requested jury instructions that undermined his main defense; (2) failed to request a poll of the jury; and (3) failed to adequately prepare for trial and consequently made a series of errors that, in aggregate, constituted legally deficient assistance. He also requests an evidentiary hearing. For the reasons set forth below, the motion and request for an evidentiary hearing will be denied.

**I.**    **Background**

    **A.**    **Charges and Conviction**

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, 15 U.S.C. §§ 9001-141. The statute created the Paycheck Protection Program ("PPP"), which provided loans to small businesses so that they could, among other things, keep their employees on payroll. To qualify for a PPP loan, a

business must have previously filed taxes and must have had prior payroll expenses and existing employees.

Elijah Buoi owned a company called Sosuda Tech that did not have any payroll in 2019 and had not filed any tax documents.  (Mot. at 3).  Nevertheless, between April 2020 and June 2020, he applied for six different PPP loans through four lenders, ultimately receiving $2 million in total funds.  (*Id.*).  He also sought an additional loan from Bank of America.  (*Id.*).  In applying for the PPP loans, he submitted multiple false and fraudulent applications stating that Sosuda Tech had payroll expenses in 2019 and had filed taxes.

On July 14, 2020, Buoi was indicted on four counts of wire fraud under 18 U.S.C. § 1343, and one count of making a false statement to a financial institution under 18 U.S.C. § 1014.  (*Id.*).  On February 24, 2022, after a three-day jury trial, he was found guilty on all five counts.  (*Id.*).  He was sentenced to 39 months imprisonment, followed by three years of supervised release.  (*Id.* at 3-4).  He is currently out of prison on supervised release.[1]

## B.     Pretrial Proceedings

After his indictment, Buoi retained trial counsel to represent him.  (*Id.* at 4).  However, at a December 8, 2021 status conference, he expressed concern about trial counsel's lack of preparation for the February 2022 trial and requested a change of counsel.  (Mot. Ex. A at 3). Trial counsel responded that he had "some pretty profound disagreements" with Buoi over trial strategy.  (*Id.*).  The Court referred the issue of representation to the magistrate judge.  (*Id.*).

On December 13, 2021, Buoi asserted to the magistrate judge that counsel had not communicated with him in the preceding months, and that in his view, counsel was not prepared

---

[1] As Buoi notes, to file a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, the petitioner must be in custody, which includes being on supervised release.  *See Francis v. Maloney*, 798 F.3d 33, 37 (1st Cir. 2015).

for the upcoming trial. (Mot. Ex. B at 10-13). Buoi explained that he provided counsel with "all the evidence" in May 2021, but that he then did not hear from him until early December. (*Id*. at 11-12). He stated that he did not "even know what happened" during that time, and that, when they texted, trial counsel "sounded as if he was someone that doesn't know me." (*Id*. at 12).

With trial just two months away, the magistrate judge warned Buoi that "the trial date may not get moved at all" and that any new counsel "is really going to be under enormous pressure" to prepare for the trial. (*Id*. at 13). After Buoi expressed his frustrations, trial counsel responded that he was familiar with the case and that he had spent 70-75 hours on the case to that point. (*Id*. at 15). Trial counsel further explained that "the allegation that I'm not doing the things that he wanted are a difference in opinion about how the case should be defended, the basis for the defense." (*Id*. at 15). The magistrate judge ultimately granted Buoi the opportunity to hire new counsel, but directed trial counsel to stay on the case until a new attorney had been retained. (*Id*. at 14-15).

After nearly a month, Buoi was unable to obtain new representation. In a status conference on January 5, 2022, trial counsel reported that he would be remaining on the case and that he was "proceeding full speed ahead." (Mot. Ex. C at 3-4). However, Buoi interjected and stated that he was still "in the process of bringing in new counsel." (*Id*.). With the trial date imminent, the Court warned him that any new attorney "should not count on [the Court] postponing the trial" and that a new attorney "might have to scramble and get up to speed in a short period of time." (*Id*. at 7). He acknowledged those risks. (*Id*.). As the Court noted, the cascading impact of the COVID-19 pandemic limited the Court's scheduling flexibility for trial. (*Id.* at 5-7).

Two weeks before trial, on February 7, 2022, the government filed an emergency motion because it had been informed that Buoi was contemplating proceeding *pro se*. (*United States v. Buoi*, 20-cr-10130-FDS*, ECF No. 119). At a hearing the next day, trial counsel explained that he had spoken with the replacement attorney that Buoi had sought to retain, and that the replacement attorney asked if the trial could be continued to allow additional time for him to prepare. (Mot. Ex. D at 3-4). Trial counsel told the replacement attorney that he understood the trial date was firm, and again expressed to the Court that he had a "real profound disagreement" with Buoi over litigation strategy. (*Id*. at 4). Buoi again expressed his concern about trial counsel's preparation and reiterated his desire to seek new counsel. (*Id*. at 4-6). The Court expressed a strong preference against moving the trial date, and after cautioning Buoi against proceeding *pro se*, again referred the matter to the magistrate judge to further explore the representation issue. (*Id*. at 6-7).

Two days later, at a conference with the magistrate judge, Buoi repeated his dissatisfaction with trial counsel and explained again that he was still trying to retain new counsel. (Mot. Ex. E at 8-10). The magistrate judge reminded him that the trial was less than two weeks away and would not likely be moved whether new counsel was retained or not. (*Id*.). In response to Buoi's allegations concerning his level of preparation, trial counsel reported that he had "been preparing full-bore to fight for [Buoi] at this trial"; that the trial was his "number one priority"; that he "never stopped preparing for this since last spring"; and that he was "locked and loaded, ready to go for this trial." (*Id*. at 9-10). Trial counsel further explained that he felt "ready" for trial and that he was continuing to prepare. (*Id*. at 10).

At the final pretrial conference, held on February 16, 2022, trial counsel apologized for a last-minute motion that he filed and explained that the uncertainty over who was going to be

counsel put him in a "tough spot" and "hamstrung [his] ability to paper this case[.]"  (Mot. Ex. G at 15).  The Court resolved the motion on the merits, notwithstanding the fact that it may have been filed late.

Ultimately, despite the uncertainty, no new counsel ever entered an appearance.

### C.    Trial and Jury Instructions

Trial began on February 22, 2022.  (Mot. Ex. H at 1).  Buoi's principal defense at trial was that he did not possess the requisite intent to support a conviction on any count.

Trial counsel did not make an opening statement either after the government's opening statement or at the beginning of the defense case.  (*Id.* at 101; Mot. Ex. I at 2).  After the government rested, Buoi took the stand and testified that he did not intend to defraud the lenders when he provided false information to them; according to his testimony, he thought that he was meant to provide the banks with projections of how he planned to spend the PPP funds.  (*See, e.g.*, Mot. Ex. J at 34).  During closing argument, trial counsel asserted that Buoi acted in "good faith" when submitting his PPP loan applications.  (*See id.* at 84).

In light of the emphasis on petitioner's claim of good faith and lack of intent to defraud the target banks, the parties and the Court discussed the jury instructions concerning intent at some length.  The government initially submitted 27 pages of proposed jury instructions that included the following language:

> Note that, with regard to finding a specific intent to defraud, you may find such an intent, though you are not required to do so, if you find that the defendant acted with reckless disregard or reckless indifference to the truth or falsity of their statements or omissions.  Conversely, if the defendant acted in good faith, they cannot be guilty of the crime.  The burden to prove intent, as with all other elements of the crime, rests with the government.

(*Buoi*, 20-cr-10130-FDS, ECF No. 106).

Buoi's trial counsel adopted the entirety of the government's proposed instruction and requested that the following paragraph be added:

> Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of fraud. A defendant has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.

(*Id.*, ECF No. 132).

The Court expressed reservations about including a good-faith instruction because of its potential to confuse the jury; among other things, referring to "good faith" as a "defense" suggested that the defendant bore the burden of proof. The Court further noted that it was confusing to suggest that "good faith" and "lack of intent" were different concepts, when they were in substance identical. The government also opposed the proposed instruction as overly favorable to petitioner.

After extensive discussion with the parties, the Court ultimately gave the following instruction:

> The third element of the crime of wire fraud that the government must prove is that the defendant knowingly and willfully participated in the scheme with the specific intent to defraud.

> The defendant acted "knowingly" if he acted with knowledge and awareness of his actions and did not act out of ignorance, mistake, neglect, or accident.

> The defendant acted "willfully" if he acted voluntarily and intentionally, and with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done—that is, with a bad purpose either to disobey or to disregard the law.

> To act with "intent to defraud" means to act willfully and with the specific intent to deceive another person (or entity) in order to obtain money or property from that person or entity.

> If the defendant acted in good faith, he cannot be guilty of the crime. The burden to prove intent, as with all other elements of the crime, rests with the government.

(Mot. Ex. J at 110-11).

### D. Jury Deliberations and Verdict Announcement

On the morning of February 24, 2022, the final day of trial, the Court informed the parties that a juror had provided notice that he had a conflict later that afternoon at 4:00 p.m. that could not be moved. (*Id.* at 13). The Court stated that it would wait until after closing arguments to determine how to try to accommodate the juror's conflict. (*Id.*).

Closing arguments ended at approximately 11:30 a.m. that morning, and the Court's instructions to the jury concluded at approximately noon. (*Id.* at 119). Before directing the jury to retire to deliberate, the Court instructed that it could take "as much time or as little time" as it thought appropriate to reach a unanimous decision. (*Id.* at 117). The Court acknowledged the juror's 4:00 p.m. conflict and also informed the jury that the courthouse would likely be closed the following day, Friday, February 25, due to an impending snowstorm. (*Id.*). However, the Court also informed the jury that the courthouse would be open the following week, and reiterated that it should take as much time as it needed to reach its verdict and that "[n]o one should ever feel pressured to return a verdict by a particular time." (*Id.*).

While deliberating, at approximately 2:00 p.m., the jury sent a question to the Court seeking clarification about the definition of "scheme" set forth in the jury instructions. (*Id.* at 120). After consulting with counsel, the Court provided a response to the jury, which then returned to its deliberations. Shortly after 4:00 p.m., the jury informed the Court that it had reached a verdict. (*Id.* at 124). The juror who had a conflict at 4:00 p.m. had not requested to be excused or otherwise accommodated, and was present in court for the verdict announcement.

Before reading the verdict, the Court asked the jury foreperson if the jury had "rendered a unanimous verdict[.]" (*Id.*). She replied "yes." (*Id.*). She then handed a signed and completed verdict form to the Clerk, who at 4:13 p.m., announced that Buoi had been found guilty on all

five counts.  (*Id*. at 124-25).  The Court asked trial counsel if there was a request to poll the jury.  (*Id*. at 125).  He replied "no."  (*Id*.).

### E.     <u>Direct Appeal</u>

Buoi appealed, essentially contending that (1) there was insufficient evidence to sustain the convictions and (2) trial counsel had provided ineffective assistance.  *See United States v. Buoi*, 84 F.4th 31, 42 (1st Cir. 2023).  The First Circuit affirmed, "easily conclud[ing] that there was sufficient evidence of Buoi's intent to defraud."  *Id.* at 39.  The court declined to reach the merits of the claim of ineffective assistance of counsel because the record had not been sufficiently developed for review.  *Id.* at 41-42.  The court concluded that the claim of ineffective assistance of counsel—which was raised for the first time on appeal—should be first addressed through a collateral proceeding under 28 U.S.C. § 2255.  *Id*. at 41.

## II.     <u>Standard of Review</u>

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may file a motion to vacate, set aside, or correct a sentence.  The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack."  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).  The petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief under § 2255.  *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  In deciding whether a petitioner has met that burden, the court generally must accept his factual statements as true, "but . . . need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

III.    **Analysis**

    A.    **Evidentiary Hearing**

Petitioner has requested an evidentiary hearing to further develop the factual record concerning his claim for ineffective assistance of counsel.  However, a petitioner bringing a § 2255 motion is not entitled to an evidentiary hearing and bears the heavy burden of establishing the need for such a hearing.  *McGill*, 11 F.3d at 225.  Moreover, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."  *Id.* at 225.  The court need not hold an evidentiary hearing if the petition "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case."  *Id.* (quoting *DiCarlo*, 575 F.2d at 954).

Here, the request for an evidentiary hearing will be denied because the Court presided over petitioner's trial and the record is sufficiently developed to refute petitioner's claims conclusively.

    B.    **Claim of Ineffective Assistance of Counsel**

A petitioner claiming a violation of the Sixth Amendment right to effective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To succeed on such a claim, a petitioner must establish both (1) that his counsel provided deficient assistance and (2) that he suffered prejudice as a result.  *Id.*  A failure to satisfy either prong is sufficient to defeat a claim of ineffective assistance of counsel.  *See, e.g.*, *Malone v. Clarke*, 536 F.3d 54, 64 (1st Cir. 2008).

The first prong requires the petitioner to demonstrate that his counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 689. A court making that evaluation "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A petitioner may overcome that presumption by demonstrating that counsel's alleged errors were so serious that his performance "fell below an objective standard of reasonableness under the circumstances." *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007).

The second prong requires the petitioner to show that counsel's deficient performance resulted in "prejudice"—that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A petitioner need not prove with complete certainty that trial counsel's performance affected the outcome of the case, but "the likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The court "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96.

Here, the record contains overwhelming evidence of petitioner's guilt—including, specifically, his intent to defraud the target banks. In evaluating petitioner's claim of insufficient evidence, the First Circuit noted that "there was abundant evidence from which a jury could easily conclude Buoi knowingly and intentionally lied to the lenders." *Buoi*, 84 F.4th at 38-39. The court went on to "easily conclude that there was sufficient evidence of Buoi's intent to defraud for his wire[-]fraud convictions," citing several records in evidence, including petitioner's

> numerous false statements in the applications and supporting documents; his
> giving different figures to different lenders which he said covered the same
> periods; his failure to file with the IRS his "tax forms" and his backdating these
> forms to make it appear to lenders the forms had been timely filed; his creation
> and use of these false "tax forms" to mislead lenders; and his improper use for
> personal purposes of the PPP funds he obtained through his deceit, all reinforcing
> his wrongful intent.

*Id*. at 39.

The First Circuit also affirmed petitioner's conviction for making false statements to a

financial institution, holding that there was sufficient evidence "for a reasonable jury to conclude

that Buoi had the requisite intent to influence a financial institution."  *Id*. at 40.

Thus, in evaluating petitioner's claim of ineffective assistance of counsel, any assertion

that petitioner was prejudiced by his counsel's performance must be evaluated within the context

of the "overwhelming evidence of guilt" that was presented at trial.  *See id*. at 39.

### 1.    Jury Instructions

#### a.    Prong One:  Deficient Assistance

Petitioner first asserts that trial counsel erred by affirmatively seeking jury instructions on

"good faith," by not opposing the government's proposed instruction, and by not objecting to the

intent instruction in its final form.  (Mot. at 23).  He contends that the final jury instructions

undermined his main defense and lowered the government's burden of proof by creating a

confusing false dichotomy between a lack of intent to defraud and good faith.  (*Id*.).

"Jury instructions must be read as a whole, not in some sort of splendid isolation."

*United States v. Goris*, 876 F.3d 40, 48 (1st Cir. 2017) (citations omitted); *see also United States*

*v. Gomez*, 255 F.3d 31, 38 (1st Cir. 2001) ("[A] single sentence from a court's charge may not be

evaluated in isolation.").  Because jury instructions are to be evaluated as a whole, a good-faith

instruction is not strictly required.  *See United States v. Dockray*, 943 F.2d 152, 154-55 (1st Cir.

1991).  But when "good faith" is used in fraud instructions, it "must be done with great care" to avoid causing confusion.  *United States v. Mueffelman*, 470 F.3d 33, 37 (1st Cir. 2006).

Here, trial counsel's request for a good-faith instruction and his subsequent failure to object to the instruction in its final form do not fall below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at 689.  First, the decision to request such an instruction could certainly "be considered sound trial strategy."  *See Phoenix v. Matesanz*, 233 F.3d 77, 81 (1st Cir. 2000).  Petitioner testified that he had a good-faith belief that the documentation that he submitted to the banks reflected his projections of how he would spend the loan funds.  (*See, e.g.*, Mot. Ex. J at 32-54).  At closing, trial counsel reiterated petitioner's position that he acted in good faith in applying for the PPP loans.  A good-faith instruction therefore reasonably aligned with petitioner's testimony and the defense's overarching strategy. *See Strickland*, 466 U.S. at 689.[2]

Petitioner also contends that trial counsel's failure to object to the final good-faith instruction reflects his misunderstanding of the law because it reduced the government's burden of proving intent to defraud.  (Mot. at 25).  He asserts that trial counsel did not understand that even if the jury did not believe the good-faith defense, it could nevertheless find that the government failed to adequately prove intent.  (*Id.*).  Petitioner contends that the final

---

[2] Trial counsel's proposed instructions were essentially identical to good-faith jury instructions approved by two other circuit courts and another circuit's pattern jury instructions.  *See United States v. Alkins*, 925 F.2d 541, 550 (2d Cir. 1991); *United States v. Gross*, 961 F.2d 1097, 1100 (3d Cir. 1992); *see also* Eleventh Circuit Pattern Criminal Jury Instruction S17 (2024) ("'Good faith' is a complete defense to a charge that requires intent to defraud. A defendant isn't required to prove good faith.  The Government must prove intent to defraud beyond a reasonable doubt.").  Thus, trial counsel's proposed language for the good-faith instruction was not objectively unreasonable. *See United States v. Wilson-Garcia*, 2012 WL 226032, at *4 (W.D. Pa. Jan. 25, 2012) (rejecting a similar claim of ineffective assistance of counsel because "reliance on accurate model jury instructions is exactly the kind of conduct one would expect from a competent attorney").

In any event, and as noted, the Court did not adopt the exact language proposed by trial counsel.  It nonetheless referred to "good faith" in its instructions, while making clear that it was the government's burden to prove intent.

instructions did not make that distinction clear, and thus created a false dichotomy, causing the jury to believe that it could convict him if he failed to prove good faith, even if the government did not prove intent beyond a reasonable doubt.  (*Id*.).

"Good faith" is not a separate concept from "lack of intent"; they are, in substance, the same thing.  Someone who has the required intent cannot have acted in good faith, and someone who acted in good faith cannot have acted with the required intent.  Moreover, "good faith" is not a "defense," except in colloquial terms; the defendant need not prove that he acted in good faith, and it would be confusing to the jury to suggest otherwise.

In any event, the final jury instructions on good faith and the government's burden of proof were entirely proper, read as a whole.[3]  The Court first instructed that "[t]he third element . . . the government must prove is that the defendant knowingly and willfully participated in the scheme with the specific intent to defraud."  (Mot. Ex. J at 110).  It then explained that "[t]he defendant acted 'knowingly' if he acted with knowledge and awareness of his actions and did not act out of ignorance, mistake, neglect, or accident."  (*Id*.).  The instructions then stated that a defendant acted "with 'intent to defraud'" if he acted "willfully and with the specific intent to deceive another person (or entity) in order to obtain money or property from that person or entity."  (*Id*.).  Each of those instructions accurately explains the law concerning the requisite *mens rea* to commit wire fraud.

The Court then instructed that "[i]f the defendant acted in good faith, he cannot be guilty of the crime"—that is, if he acted in good faith, he cannot have had the requisite intent.  (*Id*. at

---

[3] The First Circuit has previously approved good-faith jury instructions that are substantially similar to those provided here.  *United States v. Gorski*, 880 F.3d 27, 32 n.3 (1st Cir. 2018) (affirming a defendant's wire-fraud conviction where the district court instructed the jury on specific intent to defraud and then instructed that "[i]f the defendant acted in good faith, he cannot be guilty of the crime.  If the defendant had a good-faith belief that he was obeying the law, even if that belief was mistaken, he did not have the necessary knowledge and intent to commit the crime.").

110-11).  The instruction did not require petitioner to prove good faith, nor did the instruction suggest that the jury could find petitioner guilty simply because it did not accept defendant's claim that he acted in good faith.  Instead, the instruction accurately suggested that a defendant acting in good faith necessarily lacks the requisite intent to be found guilty of wire fraud.

The Court concluded by reiterating that "[t]he burden to prove intent, as with all other elements of the crime, rests with the government," ensuring that the jury understood that the burden had not shifted in any way to petitioner.  (*Id*. at 111).  Thus, the instruction left no ambiguity as to the government's burden to prove intent to defraud beyond a reasonable doubt.  Trial counsel therefore did not act unreasonably in failing to object to the good-faith instruction.

### b.    Prong Two:  Prejudice

Even if trial counsel's handling of the intent instruction somehow fell below an objectively reasonable standard, petitioner has failed to demonstrate resulting prejudice.  *See, e.g.*, *Malone*, 536 F.3d at 64.  The instructions accurately reflected the law.  There is no evidence of jury confusion as to the intent requirement or the government's burden.  The instructions clearly specified that intent to defraud was an element of the wire-fraud charges.  The instructions also repeatedly stated that the burden to prove every element of the charges— including intent—rested with the government.  There is no prejudice to a petitioner where the jury instructions correctly state the governing law.  *See, e.g.*, *Cruz v. Maloney*, 152 F. App'x 1, 6 (1st Cir. 2005) ("Failure to object to an accurate jury instruction does not qualify as ineffective assistance of counsel.").

Finally, the "abundant evidence from which a jury could easily conclude Buoi knowingly and intentionally lied to the lenders" undercuts any remote possibility that the verdict would have been different had trial counsel opposed the final good-faith instruction.  *See Buoi*, 84 F.4th at 39.  Because the record overwhelmingly supports the verdict, there is not a substantial likelihood

that the jury would have acquitted petitioner on any count in the absence of the good-faith instruction. *Strickland*, 466 U.S. at 695-96. Accordingly, petitioner's motion will be denied as to trial counsel's handling of the jury instructions.

### 2.    Failure to Poll Jury

#### a.    Prong One:  Deficient Assistance

Petitioner next contends that trial counsel erred by failing to request an individual poll of the jury after the verdict was announced. (Mot. at 33). Rule 31(d) provides that "[a]fter a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually." Fed. R. Crim. P. 31(d). Petitioner asserts that trial counsel's decision not to request an individual polling of the jury constituted an objectively unreasonable decision because there were reasons to believe that the jury had not, in fact, reached a unanimous decision. Specifically, petitioner cites two potential factors that may have pressured the jury to reach a verdict prematurely:  (1) the juror's 4:00 p.m. conflict on the afternoon of the final day of trial and (2) an impending snowstorm that would close the courthouse the following day. Petitioner maintains that, in light of those factors, a reasonable defense attorney would have requested an individual poll of the jury. (Mot. at 20).

When "[d]efense counsel ha[s] no reason to believe that the verdict was anything less than unanimous," the decision to forgo an individual poll is not objectively unreasonable. *United States v. Gerardi*, 586 F.2d 896, 899 (1st Cir. 1978). In *Gerardi*, the defendants moved for a new trial because the jury delivered a guilty verdict after only two hours of deliberation and counsel did not request a poll of the jury; two days after the verdict was announced, one juror wrote to the court explaining that the jury erred in convicting the defendants. *Id.* at 898. However, the First Circuit affirmed the convictions, stating that even if the decision not to request an individual polling of the jury is "unwise . . . in hindsight, (such a choice) does not

constitute constitutionally-deficient representation." *Id*. at 899 (quoting *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978)).  Multiple other circuits have similarly rejected claims of ineffective assistance of counsel where there is no indication that the jury's verdict lacked unanimity.  *See, e.g.*, *United States v. Tucker*, 596 F. App'x 616, 619 (10th Cir. 2014) ("In light of . . . the absence of any evidence of reluctance by a juror, counsel's failure to request an individual poll was not objectively unreasonable."); *United States v. Costa*, 691 F.2d 1358, 1363-64 (11th Cir. 1982) ("Since there is nothing in the record to indicate any juror was uncertain of the verdict, counsel's failure to request a poll does not fall outside the range of competence expected of attorneys in criminal cases.").

Here, as in *Gerardi*, the record does not contain any indication that the jury's verdict was not unanimous.  (Mot. Ex. J at 124-25).  Before sending the jury to deliberate, the Court instructed the jury multiple times that its verdict "must be unanimous."  (*Id*. at 114-15).  Because "a jury is presumed . . . to follow its instructions[,]" there is no reason to believe that the jury did not understand and abide by the Court's instruction to deliver a unanimous verdict.  *See Weeks v. Angelone*, 528 U.S. 225, 226 (2000).

After receiving its instructions, the jury deliberated for approximately four hours before informing the Court that it had reached a verdict.  (Mot. Ex. J at 114-15).  When the jury returned to the courtroom, the Court explicitly asked the foreperson if the jury had "rendered a unanimous verdict."  (*Id*. at 124).  The foreperson responded replied "yes."  (*Id.*).  The foreperson then provided the Clerk with the completed verdict form that she had signed, attesting that the jury had reached a final verdict.  (*Buoi*, 20-cr-10130-FDS, ECF No. 165).  There were no signs that any member of the jury harbored doubt as to the verdict.  Nor has any indication arisen after the trial to question the jury's unanimity or to suggest that jurors felt pressured to vote

16

guilty.  Taken together, trial counsel could reasonably believe that the verdict was unanimous.

*See United States v. Avalos Banderas*, 894 F. Supp. 2d 1169, 1179 (D. Neb. 2012), *aff'd sub*

*nom. United States v. Banderas*, 858 F.3d 1147 (8th Cir. 2017) (rejecting claim of ineffective

assistance of counsel for failure to poll jury because "the jury verdict form . . . required the

foreperson to attest in writing that the jury's verdict was unanimous.").

Neither the juror's 4:00 p.m. conflict nor the impending snowstorm raises doubt as to the

unanimity of the verdict.  The Court instructed the jury multiple times that it should take "as

much or as little time" as it needed to reach a unanimous decision.  (*Id.* at 117).  No juror

expressed concern about the possibility of continuing deliberations into the next week.  Thus,

trial counsel's decision not to poll the jury was not unreasonable because there was no legitimate

reason to believe that the verdict not unanimous.  *See Gerardi*, 586 F.2d at 899.

### b.    Prong Two:  Prejudice

In any event, trial counsel's decision not to request polling of the jury did not prejudice

petitioner.  His contention that the jury's verdict might not have been unanimous is purely

speculative and highly improbable given the lack of any supporting evidence.  Indeed, "jury

polling almost never changes the verdict."  *Tucker*, 596 F. App'x at 619 (citing *Martin v. United*

*States,* 182 F.2d 225, 227 (5th Cir. 1950) ("The right of a defendant to poll the jury is of course

recognized and long established, but from a practical standpoint, experience of the years has

shown that its benefit to a defendant in effecting a change or modification of the jury's verdict is

substantially nonexistent.")).  Again, there is nothing in the record to suggest that the verdict was

not unanimous.  No juror expressed concern or reluctance when the verdict was delivered, and

no juror has expressed anything to that effect since.  And the overwhelming evidence at trial

establishing defendant's guilt further supports the conclusion that the jury's verdict was

unanimous.

Thus, even if trial counsel had requested an individual poll of the jury, the likelihood of a different result is not substantial. *See Harrington*, 562 U.S. at 112. Trial counsel's decision not to poll the jury was therefore not prejudicial. Accordingly, petitioner's motion will be denied as to trial counsel's decision not to poll the jury.

### 3.    Cumulative Effect of Errors and Trial Counsel's Preparation

#### a.    Prong One:  Deficient Assistance

Petitioner next contends that the cumulative effect of trial counsel's alleged errors, including his alleged failure to adequately prepare for trial, rendered his assistance ineffective.[4]

Defendants are entitled "to a fair trial, not to a mistake free trial." *United States v. Delgado-Marrero*, 744 F.3d 167, 210 (1st Cir. 2014) (quoting *United States v. Sepulveda,* 15 F.3d 1161, 1196 (1st Cir. 1993)). However, "individual errors . . . may in the aggregate have a more debilitating effect." *Id.* (citations omitted). In evaluating the cumulative effect of errors, a court must examine

> the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose (including the efficacy—or lack of efficacy—of any remedial efforts); and the strength of the government's case.

*Id.* (citations omitted).

Here, the cumulative effect of trial counsel's alleged individual errors, if any, do not constitute ineffective assistance. As discussed, trial counsel's request for a good-faith jury

---

[4] In passing, petitioner asserts that trial counsel's errors warrant a new trial. (Mot. at 38). However, he has not filed a motion for a new trial under Fed. R. Crim. P. 33, and, in the absence of newly discovered evidence, the deadline to file such a motion has long passed. *See* Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."); *see also Trenkler v. United States*, 268 F.3d 16, 26 (1st Cir. 2001) (treating a § 2255 motion as distinct from a Rule 33 motion in considering the relief sought and the applicable filing deadlines). Thus, the Court understands petitioner's motion only to seek to vacate, set aside, or correct his sentence pursuant to § 2255, and any request for a new trial will not be considered at this time.

instruction was neither unreasonable nor prejudicial to petitioner. Similarly, his decision not to poll the jury was not clearly deficient, and doing so would not have changed the outcome of the case with any substantial likelihood. Given (1) the lack of any unreasonable errors by trial counsel and (2) the substantial strength of the government's case, there is no basis to conclude that trial counsel's performance in aggregate constituted deficient representation. *See Delgado-Marrero*, 744 F.3d at 210.

Petitioner contends that "trial counsel clearly failed to adequately prepare for trial," and that there was "an irreconcilable disconnect" between them. (Mot. at 38-39). He asserts that trial counsel's late filings and failure to make an opening statement at trial reflect his poor preparation. (*Id.*). He also cites trial counsel's statement at the final pretrial conference that the uncertainty surrounding petitioner's representation put him in a "tough spot" and "hamstrung [his] ability to paper this case" as illustrative of his lack of preparedness. (Mot. Ex. G at 15).

However, trial counsel's late filing due to the uncertainty surrounding petitioner's representation does not reflect a lack of preparedness on his part, but rather an acknowledgement of the fluidity of his role at the time. Petitioner sought new counsel on multiple occasions in the months leading up to trial. Despite the Court's numerous warnings that any new counsel would likely have difficulty catching up to speed before trial, petitioner insisted that he wanted the opportunity to find new counsel. The magistrate judge permitted him to do so, but required trial counsel to stay on the case until replacement counsel had been retained. Petitioner never succeeded in finding new counsel; the one attorney that he sought to retain in February 2022— two weeks before the start of trial—apparently refused to take the case unless the trial was continued. During that time, trial counsel was communicating with the prospective replacement counsel to discuss the matter, while also managing petitioner's case in the event that he stayed on

19

as lead attorney.  Thus, trial counsel's comment at the final pretrial conference merely acknowledged the challenge posed by the circumstances of petitioner's representation at the time; it did not, as petitioner now contends, reflect a deficiency in trial counsel's preparation or commitment to the case.

Petitioner maintains that trial counsel acted deficiently in failing to seek a continuance of the trial to allow the replacement attorney to take over the case.  However, the Court repeatedly made clear to the parties that it was reluctant to move the trial date to accommodate replacement counsel.  It was therefore not objectively unreasonable for trial counsel to fail to seek a continuance just days before trial was scheduled to commence.

Furthermore, at multiple pretrial conferences, trial counsel repeatedly asserted that he was working diligently on the case.  For example, on December 8, 2021, he stated that he had spent 70-75 hours evaluating and preparing the case up to that point.  (Mot. Ex. B at 15).  At the February 9, 2022 conference with the magistrate judge, trial counsel maintained that the trial was his top priority, that he "never stopped preparing for this since last spring[,]" and that he was "ready to go" for trial.  (Mot. Ex. E at 8-10).  Moreover, trial counsel adequately represented petitioner and advocated on his behalf at the various pretrial and trial proceedings, further demonstrating that his preparation and effort in the case met an objective standard of reasonableness.

Finally, petitioner highlights trial counsel's decision not to make an opening statement as illustrative of his inadequate preparation.  (Mot. at 40).  However, "the choice to forgo an opening statement falls under the presumption of sound trial strategy."  *Rivera-Rivera v. United States*, 2011 WL 2670187, at *5 (D.P.R. July 5, 2011), *aff'd*, 827 F.3d 184 (1st Cir. 2016). Other circuits have rejected similar claims of ineffective assistance of counsel that are based on

20

an attorney's decision not to make an opening statement. *See, e.g.*, *Fox v. Ward,* 200 F.3d 1286, 1296 (10th Cir. 2000) ("[I]t is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel.").  Although petitioner may have disagreed with trial counsel's decision to forgo an opening statement, it was not necessarily unreasonable given the defense theory, the evidence presented, and the fact that petitioner testified on his own behalf.  Trial counsel's decision does not therefore render his assistance constitutionally defective.

In sum, trial counsel adequately represented petitioner in the case.  Although reasonable minds may disagree with his decisions at trial, he performed at an objectively reasonable level.  Thus, there is no basis to conclude that, in aggregate, his assistance to petitioner was legally deficient.  *Strickland*, 466 U.S. at 689.

### b.     <u>Prong Two:  Prejudice</u>

For similar reasons, the asserted cumulative effect of trial counsel's errors—including his alleged failure to adequately prepare for trial—did not prejudice petitioner.  Petitioner has failed to demonstrate that there is a substantial likelihood that the outcome of his case would have been different had trial counsel prepared more than he did or had he opted to make an opening statement.  Fundamentally, the verdict resulted from the overwhelming evidence of petitioner's guilt.  *See Buoi*, 84 F.4th at 38-39.  Petitioner was therefore not prejudiced by trial counsel's aggregate performance in the case.  Accordingly, the motion will be denied as to trial counsel's trial preparation and overall performance.

## IV.     <u>Conclusion</u>

For the foregoing reasons, the motion to vacate, set aside, or correct petitioner's sentence pursuant to 28 U.S.C. § 2255 is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV

F. Dennis Saylor IV

Dated:  August 8, 2025                     United States District Judge